IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 10-cr-281-3 |
| ROBERT WESTON | : | No. 14-cv-1455 |
| | : | |

**Goldberg, J.**                                                                                                                      **December 2, 2016**

### Memorandum

Presently before me is Petitioner Robert Weston's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, Weston's motion will be denied in part and granted in part.

### I.    FACTUAL[1] AND PROCEDURAL HISTORY

On the evening of January 6, 2010, officers from the Philadelphia Police Department's 14th District Narcotics Enforcement Team were investigating suspected drug trafficking in a neighborhood in North Philadelphia. Two of the officers were waiting in an unmarked car when they received a radio call from a surveillance team who described an individual suspected of being a drug purchaser. They drove toward that individual, later identified as Weston, and stopped him with the headlights of their car shining on him. As the officers got out of their car, Weston pulled a gun out of his waistband and began running. The officers ran after him and as Weston turned into a vacant lot, he tossed away the gun. One of the officers apprehended Weston, handed him off to his partner, and recovered the gun, which turned out to be a loaded

---

[1] The statement of facts is taken from the United States Court of Appeals for the Third Circuit's opinion affirming Weston's conviction and sentence. See United States v. Weston, 526 F. Appx. 196 (3d Cir. 2013).

.40 caliber semi-automatic revolver with the serial number obliterated. The officers searched Weston and recovered Xanax (alprazolam) pills and marijuana from his pocket. The Narcotics Enforcement Team continued its investigation in the area until approximately 3 a.m. the next morning. During that time, they arrested four other persons and obtained and executed search warrants for two apartments nearby. The execution of the search warrants resulted in the recovery of three guns and a significant quantity of prescription drugs and marijuana. The police report detailing Weston's arrest also described all of the Narcotics Enforcement Team's activities.

A federal grand jury returned an indictment charging Weston with one count of possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a controlled substance, in violation of 21 U.S.C. § 844(a). Prior to trial, the possession of a controlled substance charge was dismissed upon motion by the Government. On March 9, 2011, after a two-day jury trial, Weston was convicted of possession of a firearm by a felon in violation of § 922(g)(1).

Following trial, Weston requested and was granted new counsel from the Criminal Justice Act panel. On August 8, 2011, he filed a motion for a new trial arguing that: (1) trial counsel was ineffective for failing to advise that he faced an enhanced penalty under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e); (2) trial counsel was ineffective for failing to object to photographic evidence presented by the government and for failing to present alternative photographs of the scene; (3) trial counsel was ineffective for failing to further object to testimony by the arresting officers regarding why they sought to stop Defendant, or in the alternative, the Court committed reversible error for permitting such testimony over trial counsel's objections; (4) trial counsel was ineffective for agreeing to the dismissal of the drug

possession count, which resulted in a non-bifurcated trial, and for stipulating to the admission of drugs found on Defendant; and (5) the Court erred in permitting testimony about the seizure of drugs and guns from the site of the surveillance operation, and trial counsel was ineffective for failing to ask for a limiting instruction regarding this evidence. Following an evidentiary hearing, I issued an Order dated November 7, 2011 denying Weston's motion for a new trial concluding that these arguments lacked merit.[2]

At sentencing on January 31, 2012, I determined that Weston was subject to a fifteen-year mandatory minimum under the ACCA because he had three prior convictions for serious drug offenses.[3] Weston was sentenced to 180 months imprisonment and three years supervised release. On May 6, 2013, the United States Court of Appeals for the Third Circuit affirmed Weston's conviction and sentence. Weston, 526 Fed. Appx. 196.

On March 5, 2014, Weston filed a pro se "Motion to Vacate, Set Aside or Correct Sentence" pursuant to 28 U.S.C. § 2255 and, thereafter, he filed a second motion on the required form. In both versions he raised two claims. First, he argued that trial counsel was ineffective for not moving to suppress the firearm. Second, he asserted that appellate counsel was ineffective for

---

[2] Weston filed a pro se motion for reconsideration of the November 7, 2011 Order denying his motion for a new trial. As Weston was represented, I denied the motion without prejudice and directed that counsel could refile the motion if, after consulting with Weston, he deemed it appropriate to do so. Thereafter, Weston filed a motion for appointment of new counsel stating that his current counsel declined to refile the motion for reconsideration. Counsel responded explaining that he believed Weston's motion for reconsideration to be meritless. At a sentencing hearing, Weston withdrew his motion for appointment of new counsel.

[3] Under the ACCA, a person who violates 18 U.S.C. § 922(g) and has three prior convictions for "serious drug offense[s]" faces a mandatory minimum sentence of fifteen years imprisonment. 18 U.S.C. § 924(e). Under the ACCA, a "serious drug offense" is defined as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." Id.

failing to stay his direct appeal pending the outcome of Alleyne v. United States, 133 S. Ct. 2151 (2013).[4]

On January 12, 2015, Weston filed a document titled "Defendant's Request This Court to Take Judicial Notice Most Recent Case Under [3rd Cir] United States v. Brown."[5] In this document, Weston requested that I take judicial notice of United States v. Brown, 765 F.3d 185 (3d Cir. 2014) and grant him relief because I impermissibly considered the facts behind his prior convictions when determining whether he was subject to the fifteen-year mandatory minimum under the ACCA.[6]

On July 30, 2015, I denied Weston's Alleyene and Brown claims as non-meritorious but determined that it was necessary to hold a hearing in connection with Weston's ineffective assistance/suppression claim and again appointed new counsel. The hearing on Weston's suppression claim was held on December 9, 2015.

---

[4] In Alleyne, the Supreme Court held that, other than the fact of a prior conviction, "'any facts that increase the prescribed range of penalties to which a criminal defendant is exposed are elements of the crime' and must be found [by the jury] beyond a reasonable doubt." 133 S. Ct. at 2163.

[5] As it raised an additional ground for relief, I construed Weston's letter as amendment to his original petition. As I noted in an Order dated July 30, 2015, Weston raised this entirely new ground for relief beyond the one year statute of limitation.

[6] On July 16, 2015, Weston also filed a request that I also take judicial notice of Johnson v. United States, 135 S. Ct. 2551 (2015). Weston argues that Johnson applies to his case. In Johnson, the United States Supreme Court struck down the ACCA's "residual clause" which provided that a prior conviction qualified as a violent felony predicate if it "otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another." Id. at 2563 (citing 18 U.S.C. § 924(e)(2)(B)(ii)). Weston was not sentenced under the residual clause of the ACCA. Therefore, Johnson does not apply to his case.

On December 3, 2015, Weston's counsel filed the "Motion for Reconsideration and Supplemental Motion to Vacate, Set Aside, or Correct Conviction or Sentence under Title 28 U.S.C. § 2255" which is currently pending before me. That motion is addressed below.

## II. <u>LEGAL STANDARD</u>

28 U.S.C. § 2255 provides that:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Weston's challenges to his conviction and sentence stem, in part, from the Sixth Amendment right to the effective assistance of counsel. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court held that "[a]n accused is entitled to be assisted by an attorney whether retained or appointed, who plays the role necessary to ensure that the trial is fair." <u>Id.</u> at 685. A claim for ineffective assistance of counsel has two requirements: the defendant must show (1) that "trial counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms; and (2) prejudice — "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 687-88, 693-94.

A reasonable probability is one that is "sufficient to undermine confidence in the outcome." <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). A district court's scrutiny of trial counsel's performance is highly deferential, and I presume that counsel acted in accordance with the professional standards and pursuant to a sound trial strategy. <u>Strickland</u>, 466 U.S. at 689. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's

failure to raise a meritless argument." United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). A petitioner raising an ineffective assistance of counsel claim in a section 2255 petition must prove his contentions by a preponderance of the evidence. Randle v. United States, 954 F. Supp. 2d 339, 349 (E.D. Pa. 2013).

## III.     DISCUSSION

### A. Ineffective Assistance of Counsel for Failure to File a Motion to Suppress

In his section 2255 motion, Weston argues that trial counsel was ineffective for not moving to suppress the firearm. I previously noted the following in my July 30, 2015 Order ruling on Weston's motion for a new trial:

> Weston offers his own affidavit detailing the events surrounding his arrest. According to Weston's affidavit, he was standing on the corner when officers jumped out of an unmarked car, grabbed him and pushed him up against a gate. He states that the officers asked him if he had any guns or drugs on him, he replied no, and then the officers reached into his pockets and removed a firearm and pills. Weston claims that he told trial counsel this narrative and asked trial counsel to file a motion to suppress the firearm on the ground that "officers violated my rights by going into my pockets without my consent taking the gun and pills without a warrant." Weston further asserts that trial counsel replied that the motion would be unsuccessful because the police said he had thrown the gun and that he did not want Weston to admit to possessing the gun.

(Or., p. 5, July 30, 2015.)

In its response to the instant section 2255 motion, the Government argues that the motion for a new trial hearing record demonstrates that Weston did not tell Daine Grey, trial counsel, the foregoing narrative. As such, the Government argued that trial counsel could not be deemed ineffective for failing to file a motion based on a version of events that he knew nothing about.

After review of the transcript from the hearing on the motion for a new trial, I concluded that the relevant portions of that transcript were somewhat unclear as to whether Weston denied conveying to trial counsel his version of the events. (See Or., July 30, 2015, ¶¶ 12-14.) In light of

this ambiguity and the lenient hearing standard under section 2255(b), I determined that a second hearing was warranted.

At the section 2255 hearing held on December 9, 2015, trial counsel testified that he did not have an independent recollection of whether Weston told him the version of events set forth above. (Hr. Tr., 7:2-7, Dec. 9, 2015.) Counsel did explain that it was his "common practice" to get his client's "version of what happened." (Id. at 14:3-5.)

Trial counsel further testified that he did not have an independent recollection of what materials he had received in the course of discovery and that he had not reviewed his file prior to testifying. (Id. at 8:5-11, 13:3-8.) However, based on his review of the arrest report while on the witness stand, counsel stated that it was his opinion that a motion to suppress would not have been viable. (Id. at 11:12-16.) Lastly, trial counsel explained that he had no independent recollection of his strategy at trial or whether he argued that the arrest report was inaccurate. (Id. at 15:24-16:8.)

Weston also testified at the 2255 hearing and, on direct examination, stated that he conveyed his version of events to trial counsel (i.e. that the officer reached into his pocket and took the gun) and that he had asked trial counsel to file a motion to suppress. However, on cross examination, Weston appeared to directly contradict this testimony. To illustrate these inconsistencies, portions of Weston's testimony are recounted below.

On direct examination, Weston testified:

Q. Did you tell Mr. Grey that the officers jumped out of an unmarked car wearing badges around their necks and grabbed you and pushed you up against the gate or a fence?

A. Yes. I explained that to Mr. Grey, but he further kept saying that they were going to say that I discarded the firearm and I need not worry about that. Just focus on the facts of beating the case.

> Q. Did you also tell him that while facing the gate or the fence that you were asked if you had a gun or drugs on you and you reply no?
>
> A. Yes.
>
> Q. Did you also tell him that the officers stuck their hands in front -- in your front right pants pocket and pulled out a gun without your consent?
>
> A. Yes, but Mr. Grey kept saying the cops was going to get on the stand and say that I discarded the firearm.
>
> Q. Did you also tell him that the officers stuck their -- his hand in your left front pants pocket and pulled out some pills without your consent?
>
> A. Actually, I told Mr. Grey that they recovered a firearm and drugs from me. I never told him what was on me or in my pockets, no.

(Id. at 21:12-22:8.).

The above testimony seems to reflect that, at least according to Weston, he did advise trial counsel that a gun was removed from his pocket. However, on cross-examination, the following exchange occurred:

> Q. Okay. So wouldn't you agree that, at [the new trial hearing], you testified under oath that you and Mr. Grey talked about the missing details that was in the case, but did not talk about as far as how did the whole arrest happen, alleged stop happen?
>
> A. Yes. We never talked -- we talked about the case, things that I told him, but we didn't talk about the case as far as me and him and the things that I was exposed to. No, we didn't.
>
> Q. So you didn't talk about as far as how the whole arrest happened, the alleged stop happened? Isn't that your testimony under oath at the previous hearing.
>
> A. I just told you, I told him about things that I knew, but we never discussed the case. We talked about the facts.
>
> Q. Okay. <u>Did you tell him how the whole arrest happened</u>?
>
> A. <u>No, I never explained to him that -- I just told you that</u>.

> Q. Okay. Did you tell him how the alleged stop happened?
>
> A. I just told you I never talked to him about the whole case.
>
> Q. And I am asking you specifically about how the arrest happened and how the alleged stop happened. Did you tell him that?
>
> A. Yes, I brung it to his attention, but he just over talked me.

(Id. at 32:4-33:3 (emphasis added.))

As evidenced by the foregoing portions of the hearing transcript, Weston variously testified that (1) he did convey his version of the arrest to trial counsel; (2) he did not convey his version of the arrest; and (3) he attempted to convey his version of events but trial counsel talked over him. Based on these fundamental inconsistencies and apparent refusal to answer very straight forward questions, as well as my observations of Weston during his testimony, I do not find his affirmative statement that he conveyed his version of events to trial counsel to be credible. For these reasons, I conclude that Weston has failed to prove by a preponderance of the evidence that he did in fact tell trial counsel that the officers pushed him against a gate and reached into his pocket, removing the gun in question.

Thus, based on the record before me, trial counsel's decision not to file a suppression motion was not objectively unreasonable because (1) the record does not establish that Weston ever told counsel that the gun was taken from his pocket, and (2) the evidence available to counsel and introduced at trial demonstrates that such a motion would have been meritless. See California v. Hodari D., 499 U.S. 621, 626 (1991) (holding that when a person flees and does not submit to police authority, any item that he discards during the flight is not fruit of a Fourth Amendment seizure). As such, Weston is due no relief on the claim that trial counsel was ineffective for failing to file a motion to suppress the firearm.

9

B.  **Motion for Reconsideration/Supplemental Motion**

Shortly before the section 2255 hearing, Weston filed a counseled "Motion for Reconsideration and Supplemental Motion to Vacate, Set Aside or Correct Conviction" challenging the application of the ACCA mandatory minimum. Although ostensibly styled as a motion for reconsideration, Weston does not seek reconsideration of my July 30, 2015 Order determining that Brown is inapplicable to his case. Rather, Weston asks that I "find that counsel's ineffective assistance resulted in one or two prior convictions being improperly found as ACCA predicate offenses or, in the alternative, find that the Court improperly considered the criminal complaint and that the Court should not have found three ACCA predicate offenses." (Def.'s Mot. pp. 4-5.)

As I noted in my July 30, 2015 Order, the "Request for Judicial Notice" containing the Brown claim was filed after the one year AEDPA deadline lapsed and because it appeared to raise an additional ground for collateral relief I construed it as an amendment to the original petition.[7] The instant motion was filed even later than the "Request for Judicial Notice" – it was filed approximately fourteen months after the expiration of the AEDPA deadline.

The Government objects and asserts that, although styled as a motion for reconsideration, the filing raises new arguments, cites different authority, and relies on different facts. Therefore, according to the Government, the motion for reconsideration raises an entirely new claim which is barred by AEDPA's one year time limit. I will first address the threshold question of whether the claim is barred by AEDPA's one year period of limitation.

---

[7] The July 30, 2015 Order characterized the "Request for Judicial Notice" as raising a new ground for relief. However, instead of determining whether this claim related back to the original habeas petition, I resolved the claim on the merits. As such, the timeliness of both the "Request for Judicial Notice" as well as the "Motion for Reconsideration" remain open questions.

### a. Timeliness

Although the motion for reconsideration was filed beyond the limitations period, I may nonetheless review the claim asserted therein if it "relates back" to a claim contained in the original petition.[8] Federal Rule of Civil Procedure 15 applies to federal habeas petitions pursuant to 28 U.S.C. § 2242 and allows petitioners to file amendments that "relate back to the date of the original pleading[.]" See Mayle v. Felix, 545 U.S. 644, 655 (2005). Therefore, a claim in an amended petition that is filed outside of the statute of limitations is considered timely if it "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." Fed. R. Civ. P. 15(c); Mayle, 545 U.S. at 655. The United States Supreme Court has directed that, under this standard, relation back is appropriate "[s]o long as the original and amended petitions state claims that are tied to a common core of operative fact[.]" Id. at 664 & n.7.

I conclude that the issues raised in the motion for reconsideration relate back to the original habeas petition as both challenge the manner in which I determined that Weston was subject to the mandatory minimum provision of the ACCA. In his initial pro se habeas petition, Weston argued that under Alleyne he was entitled to a jury determination of the prior convictions which triggered application of the mandatory minimum sentence provision of the ACCA.[9] In the pro se "Request for Judicial Notice," Weston argued that my consideration of the facts behind his

---

[8] I note that Weston has not argued that he is entitled to equitable tolling of the one year limitations period.

[9] As I explained in the July 30, 2015 Order, contrary to Weston's contention, Alleyne does not require that prior convictions which trigger the ACCA mandatory minimum be submitted to a jury. See United States v. Blair, 734 F.3d 218, 227 (3d Cir. Nov. 4, 2013).

prior convictions was impermissible under Brown.[10] In the counseled motion for reconsideration, Weston now argues that the particular state court records on which I relied were insufficient to establish that the convictions were qualifying offenses under the ACCA. As all three arguments concern the procedure used to determine whether Weston has three qualifying offenses for purpose of the ACCA, I conclude that the claims arise from a common core of operative facts. Therefore, the counseled motion will be construed as a motion to amend the original habeas petition. That motion to amend will be granted as the argument contained therein relates back to the original claim contained in Weston's pro se habeas petition.[11]

### b. Merits

The ACCA mandatory minimum applies if a defendant is convicted of a violation of § 922(g) and "has three previous convictions . . . for a violent felony or a serious drug offense, or both[.]" 18 U.S.C. § 924(e). Under the ACCA, "serious drug offenses" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A).

---

[10] In United States v. Brown, 765 F.3d 185, 187 (3d Cir. 2014), the Third Circuit concluded that a violation of a subsection of Pennsylvania's terroristic threat statute, 18 Pa. Cons. Stat. § 2706(a)(1), was "categorically" not a crime of violence for purposes of the ACCA. Id. at 196-97. As I previously explained in the July 30, 2015 Order, Brown does not apply to Weston's case because his ACCA qualifying convictions were for possession with intent to deliver controlled substances.

[11] I make this determination in part based on my obligation to construe the initial pro se filings liberally. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).

Pennsylvania law prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance[.]" 35 Pa. Stat. Ann. § 780–113(a)(30).[12] The punishment for violating § 780–113(a)(30) depends on the type of controlled substance involved. See § 780–113(f). Possessing or manufacturing cocaine with intent to deliver carries a maximum term of imprisonment of ten years. § 780–113(f)(1.1). Possessing or manufacturing heroin with intent to deliver carries a maximum term of imprisonment of fifteen years. § 780–113(f)(1). With certain exceptions not relevant here, possessing or manufacturing marijuana with intent to deliver carries a maximum term of imprisonment of five years. § 780–113(f)(2). Therefore, a conviction for possessing solely marijuana with intent to deliver does not qualify as a serious drug offense for purposes of the ACCA.

At sentencing, I determined that Weston's 2001, 2002 and 2006 convictions constituted serious drug offenses and, therefore, the ACCA mandatory minimum applied. Weston concedes that his 2001 conviction for possession with intent to deliver "should count as an ACCA predicate conviction." (Def.'s Mot. to Am. p. 3.) However, he urges that the documentation introduced at the sentencing hearing was insufficient to prove that his 2002 and 2006 convictions constitute serious drug offenses under the ACCA.

---

[12] As I explained in the July 30, 2015 Order, the Third Circuit has held that Pennsylvania's possession with intent to deliver statute is divisible and, as such, convictions pursuant to that statute are assessed under the modified categorical approach. See United States v. Abbott, 748 F.3d 154, 158 (3d Cir. 2014).

Under the modified categorical approach, a sentencing court may consult "the charging paper and jury instructions when the conviction resulted from a jury trial, or, when the conviction resulted from a guilty plea, the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" to determine whether the prior conviction qualifies as an ACCA predicate offense. United States v. Brown, 765 F.3d 185, 189-90 (3d Cir. 2014) (internal citations omitted).

At sentencing, I reviewed certified records from the Court of Common Pleas regarding the 2002 and 2006 convictions. As to the 2002 conviction, the Government introduced a certified copy of the Criminal Complaint charging Weston with possession of crack cocaine with intent to deliver. Weston urges that it was error to consult the Criminal Complaint because the charging document, the Bill of Information, to which he pled guilty does not identify the controlled substance – it merely charges Weston with possession with intent to deliver "a controlled substance." As such, Weston urges "since there was no indication of which controlled substance the defendant pled guilty to, there was only speculation that the defendant had admitted to all the elements of an ACCA predicate offense." (Def.'s Mot. to Am. p. 3.)

With respect to the 2006 conviction, the Government introduced a certified copy of the Bill of Information which lists the substances charged as cocaine, heroin and marijuana. Weston urges "that it is unclear that said conviction carried a maximum possible term of imprisonment of ten years." (Id. at 4.)

"When the prior conviction resulted from a plea, the sentencing court may look to the charging document and—in lieu of jury instructions—the plea agreement and plea colloquy, or to some comparable judicial record, to determine if the defendant necessarily admitted all the elements of the ACCA offense." United States v. Tucker, 703 F.3d 205, 210 (3d Cir. 2012) (quoting Shepard v. United States, 544 U.S. 13, 26 (2005)). Based on the documents introduced regarding the 2006 conviction, I agree that one cannot determine whether Weston admitted that he possessed with intent to distribute cocaine, heroin and/or marijuana when he pleaded guilty. It is entirely possible that he pleaded guilty only to possession with intent to deliver marijuana pursuant to the terms of a negotiated plea agreement. The Third Circuit has explained that the modified categorical approach is applied "in order to determine the least culpable conduct

14

sufficient for conviction." Tucker, 703 F.3d at 214 (quoting Jean–Louis v. Atty. Gen., 582 F.3d 462, 466 (3d Cir. 2009)). Based on the documents before me, the least "culpable" conduct sufficient to sustain the 2006 conviction is possession with intent to deliver marijuana, which as noted above, does not qualify as a serious drug offense.

The sentence Weston received for the 2006 conviction – one to three years – does not establish that he necessarily admitted possession of cocaine or heroin.[13] Nothing in certified court records introduced at sentencing establishes which drug or drugs were specified in the plea agreement or colloquy. See, e.g., United States v. Harmon, 290 F. Appx. 480, 481 (3d Cir. 2008) (district court properly found an ACCA predicate offense where the charging document stated possession with intent to distribute a "controlled substance classified under Schedule I, II, or III. Cocaine" and the defendant's handwritten statement "I plead guilty to possession with intent to deliver a controlled substance" appeared on the reverse side of the charging document). As such, the documents introduced at sentencing did not establish that the 2006 conviction constitutes a serious drug offense and it was error to rely on those documents to conclude otherwise. At the resentencing, the government may offer appropriate documents to prove to establish which controlled substances were the subject of Weston's plea.

Weston's challenge to the documentation of his 2002 conviction is somewhat less availing. The Criminal Complaint from that conviction lists crack cocaine as the only drug that was distributed. It defies logic to suggest that Weston would have pleaded guilty to possession

---

[13] See United States v. Williams, 290 F. Appx. 475, 477 (3d Cir. 2008) (defendant argued that "the records from the prior conviction did not establish that a prior conviction was for a 'serious drug offense' as required under § 924(e)(2)(A) because the offense involved both marijuana and cocaine. . . . However, [the defendant] was sentenced to a period of incarceration of not less then [sic] 1 year nor more then [sic] 10 years on that charge. Given the 10 year maximum, the government clearly established by a preponderance of the evidence that his prior conviction subjected him to the Armed Career Criminal enhancement.")

with intent to distribute some other drug. Nonetheless, reliance on the Criminal Complaint may have been improper if it was superseded by a Bill of Information. See Evanson v. Atty. Gen., 550 F.3d 284, 293 (3d Cir. 2008) (where a criminal complaint is superseded by a criminal information, "it is not the relevant charging document and is not an appropriate source under the modified categorical approach.")

Therefore, out of an abundance of caution, the Government may introduce at the sentencing hearing transcript, if it exists, the plea agreement, plea colloquy, or some comparable judicial record to establish whether Weston did in fact admit to possessing crack cocaine when he pled guilty to the 2002 offense.

## IV. CONCLUSION

For the foregoing reasons, Weston's motion will be denied with respect to his ineffective assistance of counsel claim but granted with respect to the ACCA sentencing claim. An appropriate order follows.